Here I am again. And as I indicated, this was originally one case. Judge Anderson cleaved it into two. And so that's how we got to two cases. But that's not on appeal. No, I thought that the discretion standard wouldn't make for a good appeal. All right, so go forth with what you did appeal. All right. This is a case where there's simply no probable cause to undertake a search. And the review of the affidavit, and I think we covered this exhaustively in our brief, but review of the affidavit, which is that the pertinent portion is in our excerpts of record at, well, it's tab two and it's page seven therein. We have basically a non sequitur, and I'm going to reserve, I'd like to reserve five minutes of my time. All right. Basically, we have the premise from Detective Bobkowitz that my client is a child molester. I think that that's a dubious premise at best. Basically, this is, he reports, as you heard in the last case, that my client in front of a classroom of children picked up one child to, you know, celebrate her, you know, win in a cross-country race. Probably wasn't a very good thing to do. I'm sure he won't do it again, but it's certainly not child molestation. And even if it was, and I'm certainly, I don't want to be misunderstood that I'm conceding that it was, but even if it were, how does that get to go to his house with a search warrant to search his home for computers and evidence of child pornography? Now, I want it clear, and it's in... Well, before you get too interested in that, why don't you talk about the standard of review here? What do you need for probable cause? Well, first of all, this is a grant of a 12B6. Well, sure. I understand what it is. Right. What do you need for probable cause? You need reasonable cause to believe that there's a fair probability that evidence of crime or contraband itself will be found in the place to be searched. Okay. And we looked at the cases involving child pornography, and they all involve some nexus to being a member of a child porn site. Are we looking at the totality of the circumstances here? Yes. Okay. So the affidavit goes past the bare bones. We're really looking at the totality of the circumstances. Yes, and what is that? We have basically... Including the veracity and the basis of the knowledge of the person supplying the information. Correct. Okay. And we have, apart from this... Of the sort that's being looked for. Yes. All right. I agree with the court entirely. I don't think that changes anything, but it focuses. And what happened in this particular case was the information was presented to the magistrate, and the magistrate granted the warrant. Correct. That's also correct. All right. So if the magistrate grants the warrant, what deference do I have to give to the magistrate? Basically, very little. I think this is a de novo review. Well, doesn't U.S. v. Kelly say a magistrate's determination should be paid great deference? That resolution of doubtful or marginal cases should be determined by that deference? Well, if the court feels this is merely a doubtful case, I think it's far worse than that. Well, all I'm trying to get to is my final question. What is the standard? The magistrate then issued the warrant, and as I understand it under Melinder, officers only lose immunity where the warrant's application is so lacking, and in Dish of Probable Cause, as to render any officer's belief that its existence was reasonable to be totally unreasonable. Yes. So we have officers who have a magistrate who's already issued a warrant, and now that warrant says what they're allowed to do, which they did, and those officers, in your mind, are supposed to look at that warrant and say based on that warrant and based what the information is under that warrant, that not only they're bad, but the magistrate was absolutely stupid in what he did. I don't think we have to call anybody names. It might feel good, but I'm not going to do that. But I would point out that Melinder is a Ninth Circuit case, and obviously under principles of stare decisis has to give way to Malley v. Briggs, which is the U.S. Supreme Court that says simply because the magistrate signs an order, a search warrant in this case, could be an arrest warrant, doesn't mean that if so facto there's qualified immunity or that there is even probable cause. And Malley says we're an officer, and we pled it, where an officer executes a warrant so lacking in the indicia of probable cause such that no reasonable officer, objective standard, would believe that he had probable cause, gets no leg up from that. Well, where we're really going, and I guess the end result of what I'm doing here is that as to qualified immunity, it seems to me that not only do I have to find a constitutional violation, but I have to find that the law is so clear that these officers would have been on notice that what the magistrate did violated the Constitution. Let me address that. Where is there any indication except in the fertile brain of Detective Bobkowitz that there's child molestation material anywhere? There is no connection to a website. There is no indication that anybody saw him with magazines. Other than this one incident and the anonymous make weight of these others that were added by Ms. Cortez from the last case, as she called Detective Bobkowitz over the months, that's it. There's nothing, and I did a long search to find how these child pornography cases result in warrants. There has to be some connection. There's the case where they searched a third party's computer, or they had some kind of way to find out that this person ran a website for child porn, and they found the name of the person who was subsequently arrested as a subscriber. So then they had some basis to connect him with possession of child porn. But here we've got a dubious act of, you know, it's arguable at best that this involves molestation, and I think the proof of the pudding is the police didn't even act on that act. There are actually about ten acts in the declaration, aren't there? Well, they added... We're just talking about one isolated incident. Right, but they added the other stuff that was years old, and they hadn't done anything about it until they decided, well, the school district, we've got to add this other stuff in because, I mean, supposing that it's not enough by itself to lift up a child and put her down. But looking at the warrant, what the magistrate court saw, the declarant was before him. The declarant testified to the veracity of these prior incidents. No, he couldn't do that because he said, and if you look at the warrant, it says that a mother reported this and she didn't believe her child, but now years later she does. It's multiple hearsay. It's stale. I mean, obviously staleness is an issue, and so you're going back to these old incidents. They're years old if they occurred at all, and the district did nothing about them. Ms. Cortez says she made a note. Well, years later her note surfaces, but they never told my client nothing. No criminal charges. But was the declarant who filed the affidavit, was that declarant testifying that he had investigated all of these incidents and he was certifying to the magistrate judge at the court? No, no. He said Ms. Cortez, I believe. What did he swear to? Blood. He was given information, and Ms. Cortez's name appears prominently in the affidavit, Ms. Cortez, and she was misnamed. He called her Ms. Castro. I mean, the carelessness here is emblematic of that. But, you know, he went through this and said, well, this happened, that happened, but he didn't speak to all these people, and Ms. Cortez is the pipeline for most of this, if not all of it. He says that he spoke to the student JA for the September 22 incident, and then he says he spoke to some other girls in the class who say yes, maybe. None of the boys uphold that, so it's at least an equipoise as to the September 22 incident. And I believe that Ms. Cortez is the source of information for Mr. Bobkowitz as to all these other matters. She's the one who had her notes. She's the one who dredged up or made up, I don't know, but came up with these things that she told Bobkowitz, and clearly she was trying to help him in his quest to get some kind of criminal filing or search warrant as to Mr. Daugherty. In fact, of course, they went to the house, and I know how this works, but there was nothing found because there was nothing there, and they had all this stuff for a year and didn't come up with anything. They never went. If they really believed that he had child porn, you know, we've all heard about school teachers and priests and having their computers in their offices. Wouldn't that be the very first place to go? They didn't even go there. This is a search warrant of the man's house where he lives with his wife and son miles and miles away. There was no nexus other than the fact that he lived there and they had, you know, their best suspicions. And where's the nexus to child pornography? Where's the nexus to his home, the residence? This is a Fourth Amendment issue, clearly. You have a good Supreme Court case or even federal case from a circuit court that would suggest to me that reading it, police officers ought to have known that what this district judge or what the magistrate did was so out of it that there would be clear error to have served and gone forth with the warrant. Well, I haven't looked at all the citations under Malley, but I would start with Malley because that's... Malley? You think that's the one? Well, that's the best that I can give the court today. There's Lanier as well. I'll take Malley and Lanier and I'll look at it. The next question. Where are your allegations in your briefs as to what the city did to deserve any liability? Well, it's a Monell allegation. I don't find any allegations as to what the city did. Well, this is probably closer to a supervisory liability than a Monell. Well, it doesn't matter. I'm trying to figure out where do you say in your briefs what the city did to deserve supervisory liability? Well, first of all, Bobkowitz was a supervisor himself. Well, I'm not talking about that, but you have to make allegations of quite detail. We've put it in quite a bit of law about what the city needs to do to get this liability. Well, that's true, but this is a 12b-6, Your Honor. We weren't even allowed to amend, much less conduct discovery. Let's go right to that amendment. Did you ever make a motion to amend? It was in our brief. Where? Not in the appellate brief, in the brief in opposition to the 12b-6, and I believe it states in our brief that we requested these. Did you ever make a motion, a formal motion? Did you ever press your request to amend? I wasn't allowed an oral argument, Your Honor. Did you ever tell the district court what you would amend? Not in so many words. We said that we would like to amend if the court, in the alternative, if the court found that the motion was meritorious. So how did you comply with Rule 15a? Well, 15a is to amend the complaint, but the fact of the matter is that the court, as I understand the rules, if there's any possibility that an amendment could cure the so-called defect, then the court must allow it. I don't think it requires a Rule 15a motion, especially when you're being attacked under a 12b-6 motion to dismiss. I guess I'm trying to figure out, because really I'm looking at whether to give you some more chance to amend, and I'm trying to see where you gave the good district judge the opportunity to even look at what you would say. Well, if you could say it to me, what would you further allege in your complaint? I would allege that the subject incident was not molestation and it didn't give a predicate basis. I would allege that none of the allegations took into account what a child molestation tangible document search required. We didn't get there because I wasn't allowed. This wasn't put in front of the district court. And as to the court's comment, if you look at page 2 of Exhibit 3 of Appellant's Excerpts of Record, it's an amended opposition to Defendant's 12b-6 motion, and Item 8 on Lines 13 and 14 says, quote, Alternatively, plaintiffs respectfully request leave to amend to add specific facts as the court deems necessary to support their claims. Are these the best facts you have that you've given me today? Well, you put me on the spot. I'm sure that there would be more. I could also look into some other situations, but basically that these facts do not comport with the law. I'm looking for tangible evidence of child molestation, that my client's conduct doesn't even rise to the level of molestation, which is the basic fact, supposedly, quote, unquote, which then has to be extended to the presumed fact. So the presumed fact is that there's going to be child pornography. I don't think there's a fair possibility that's shown based on these facts because you have such a weak predicate fact, and then you have pure speculation. The affidavit doesn't say, oh, I have arrested other people who had child porn and they were all molesters, or I had a school teacher, or I've been trained such and such. It's a bald conclusion and nothing more. He leaps from these disputed, basic, vague facts, which we discussed in the other case, and comes to the unsupported conclusion by speculation that he's going to find child porn. Well, that's not proper at the outset, and he didn't find any, which I suppose doesn't necessarily prove the point, but it's not inconsistent with it. Thank you for your argument, Counselor. Your time has elapsed. Thank you. Good morning, Your Honors. May it please the Court, my name is Christopher Pisano. I'm appearing on behalf of the appellees. With me today is Mr. Ross Trindle. Mr. Trindle has been working with me on this case since its inception, and he was responsible for a large part of the briefing. I think that it's important for the Court to keep in mind, as this is an appeal of a 12b6 motion, the Supreme Court cases of Twombly and Iqbal, which really go into the standards and what is needed in terms of proper pleading of a complaint. And what those cases say is that the complaint has to contain a plausible claim, and there has to be a reasonable expectation that discovery will reveal the evidence that will lead to prevailing for the plaintiff. When the Court looks at the complaint that was filed in this case, those factual allegations are not there. This is a really threadbare complaint that largely consists of reciting the elements of the cause of action. There's very little factual allegation to analyze here. I mean, really, when one looks at the paragraphs of the complaint that were filed, basically what we have here is an acknowledgment that there was an incident where the minor female was lifted up, and then there was an investigation and a warrant and a search and seizure of property and a seizure of the persons by forcing them to remain on the couch while the house was being searched. That's basically it. Counsel, was this complaint filed after he filed? This complaint was filed on October 28, 2008, at least the complaint after it was severed. That would be before Iqbal, I believe, Your Honor. However, the Twombly and the Iqbal standards of analysis would still apply. Wouldn't that lead us to suggest then, Counselor, which is where I was leading counsel to go, that one should at least allow an amendment given new law? Your Honor, I don't believe that this is a case that warrants amendment for two reasons. First, this was not the first bite of the apple for the plaintiffs. It wasn't the first bite of the apple, but if you're really going to base your argument on Twombly and Iqbal, he didn't ever have a bite of the apple after having Twombly and Iqbal come down the pike. And he did, though he didn't pursue it, he did say, well, I'd like to amend my complaint if you're not going with me. And, Your Honor, a couple points on that. Twombly was actually decided in 2007, so Twombly predates this complaint. Your Honor, Iqbal was decided in May of 2009. Yes, so it's post. Iqbal is post, but all Iqbal really says, Your Honor, is that the Twombly analysis applies to all civil proceedings. I believe in Iqbal, the petitioner made the argument that Twombly is limited to the antitrust setting, and the Supreme Court said no, Twombly applies in all civil proceedings. Twombly essentially therefore set forth the pleading standard as of 2006, so that predates the complaint in this case. Let me also bring up one other point. I think counsel, with all due respect, I think there was a lot of respectable authority that this was going to be limited to the antitrust setting. So it wasn't really until we had Iqbal that people got focused on what the pleadings should contain. And, Your Honor, that actually brings up my second point in response, and that is that while the complaint was very threadbare and lacking in factual allegation, the warrant itself was properly before the district court on a request for judicial notice that nobody opposed. And so all of the analysis and allegation from the warrant was properly before the district court, and the district court made an analysis of whether there was probable cause and whether the qualified immunity should apply. I don't know... Also, do you have any case which says that an allegation that there has been a child molestation is an adequate probable cause for a search for pornography? Do you have any cases like that? I don't have a case that is directly on point, Your Honor. I think that the Gord case is illustrative, and I think what we can glean from Gord and the other probable cause cases is that one has to look at the totality of the circumstances. One has to give deference to the magistrate's determination. One also has to... What are the facts of that case? Of Gord, Your Honor? In Gord, there was an investigation of a company that ran a website that displayed child pornography, and from that investigation they found the plaintiff's name, and the court put forth an affidavit based upon that investigation to search the plaintiff's house. Does that not involve child molestation? Does it involve probable porn? So there isn't any case, and I have tried to find one that's right on to tell us what our Ninth Circuit law would be in that respect, and I didn't find it. And I would agree with that, Your Honor. We searched as well. I don't believe there is a case that is directly on point with the facts of this case. However, what all of the cases talk about is that an analysis of probable cause and whether the warrant is good or not really has to depend on the totality of the circumstances and that it is a fluid concept based upon the reasonably prudent person and can't be subjected or based upon a legal and technical analysis. I think that the Illinois v. Gates case really goes into great length about how one is supposed to analyze whether there was sufficient probable cause. And it just kind of boils down to, is an allegation of child molestation and some evidence of that adequate? And is it or isn't it? It's not a lot of other facts or allegations that go in it. It's a pretty ballroom thing. Is molestation something that is the basis for probable cause for fighting for others? And, Your Honor, I would disagree with that in the following way. This is not a case where Officer Bobkowitz was a rookie fresh out of the police academy. Officer Bobkowitz, and this is set forth in his warrant, has 19 years of experience handling both juvenile and sex crime allegations. Officer Bobkowitz is well versed in this field. And Officer Bobkowitz... But he never said that he had some cases of molestation where they got in a warrant and they fought pornography. He doesn't tell us that. That's true. But what Officer Bobkowitz does talk about is based on his experience and his training and his education, is that people who engage in the conduct that was alleged and was discussed in his interviews with the students, those persons are likely to possess pictures of underage minors in various states of undress. And that was the basis for the warrant. And it was narrowly tailored. And so I don't think we can just say, we can just say allegation of molestation, child pornography, and say there's nothing to bridge that. There absolutely was. And when one looks at the totality of the circumstances, in addition to the interviews with the students, there was, of course, the interviews with the school district officials. But Officer Bobkowitz never says that in investigating these molestation cases, he found pictures of underage children. He never says that. That is true, Your Honor. He doesn't... I'm just trying to. It's a troubling area. Your Honor, I... It's all very well to be on the police force for 19 years and to have dealt with child molestation, but there's no bridge to anything else. Well, Your Honor, I would respectfully disagree. And I believe that in addition to the experience and the interviews with the students and the school administrators, I think that Officer Bobkowitz was quite reasonable in making the statement that the persons alleged to have committed this conduct are those who are likely to possess child pornography. And I think that really dovetails into the second aspect of the argument, and I see time is winding down, and that is the qualified immunity that the court was discussing with the appellant during his term. And when you're talking about qualified immunity, that second prong tells us that qualified immunity applies and it protects all except those who are plainly incompetent or those who knowingly violate the law. And I don't think that one can look at the circumstances of this case based upon what was pled in the complaint and what is contained in the affidavit and the warrant and say that Officer Bobkowitz was either plainly incompetent because he wasn't or that he was knowingly violating the law. Officer Bobkowitz... I think there... I would agree with you that there are two issues and they really haven't analyzed the second one. There can be a constitutional violation and still give qualified immunity to these people. Correct. And I think that that's something that you should argue to us. And it is fully briefed. I know that we fully briefed qualified immunity. And in this case, really there's no allegation that Officer Bobkowitz lied to the magistrate or attempted to deceive. Officer Bobkowitz conducted a thorough investigation, including multiple interviews, analysis of all the relevant facts, went to the magistrate. The magistrate signed off on the warrant. There's absolutely no allegation and nothing in the warrant to suggest that Officer Bobkowitz was knowingly violating the law or that he knew that there was some due process violation going on and yet he went forward anyway. Those facts just aren't there. And accordingly, Officer Bobkowitz is entitled to qualified immunity as was found by the district court. And this, again, gets back to both his years of experience and the investigation that he conducted. In other words, Your Honor, to sum up qualified immunity, you can't say this was objectively unreasonable. Let me just very briefly, because I see my time is winding short, on the Monell and supervisory liability claims. There really is nothing. There is no allegation to tie liability to the city or to the police chief. There's no allegation that the police chief was involved in any way in this. And there's really no allegation that Officer Bobkowitz had any supervisory role in any of this. Those allegations aren't there. The district court made the proper analysis and the proper determination, and the decision should be affirmed. Thank you. Thank you. Counselor, you went way over, but I'll give you 30 seconds. Thank you. I very much appreciate that. In our brief, we indicate that following the search of Mr. Doherty's residence, that Bobkowitz stated, you should have talked to our person, the officer. They sent a female police officer to the school, and on the advice of his union counsel, Mr. Doherty did not give a statement, which, of course, was his right. So isn't it odd that at the conclusion of the search, the officer Bobkowitz, the defendant in this case, who counsel portrays as objectively reasonable, would make a remark like that? It sounds retaliatory. I don't know where it comes from otherwise. Also, as far as a thorough investigation, I think the facts show that that just didn't happen. And as far as Bobkowitz not being a supervisor, he was supervising the raid at Mr. Doherty's home, and the officers pulled guns on them. Anything else? No, except that the search itself was unreasonable in the manner in which it was conducted. Thank you. Would you say again what Bobkowitz said after the search? Yes. I didn't get that. I'm sorry. I'll repeat it. He told Mr. Doherty, words to the effect, and it's in our brief, you should have spoken to the officer or given a statement, words to that effect, and, of course, Mr. Doherty did not do so on the advice of counsel, and you can't have a penalty for the exercise of a constitutional right. Thank you. Anything else? Judge Fletcher, following up? Anything else? No. All right. Case 09-56395, Doherty v. City of Covina, is submitted. And, counsel, I would say to both of you once again, thank you very much for your arguments and your briefs. I appreciated it, appreciated you being here and subjecting yourselves to our questions to get to these very, very tough issues. Thank you very much. Thank you.
judges: Brewster, Fletcher B. , Smith N. R.